# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN E. FIELDS, | CASE NO. 1:09-cv-01771-AWI-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART (DOC. 51) |
| v. | |
| MAURICE JUNIOUS, et al., | |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |
| _____/ | |

## Findings And Recommendations

### I.      Background

Plaintiff Kevin E. Fields ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint against Defendants K. Foley, D. B. Hernandez, R. Magvas, S. Marsh, L. Molina, and J. Tucker for deliberate indifference in violation of the Eighth Amendment. On December 2, 2011, Defendant filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 51. Plaintiff filed an opposition on February 10, 2012.[1] Doc. 57. On March 2, 2012,

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on September 1, 2010. Second Informational Order, Doc. 14; *see Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1   Defendants filed a reply.  Doc. 60.  The matter is submitted pursuant to Local Rule 230(l).

2          Before discussing the motion for summary judgment, the Court will first address

3   Plaintiff's notice to voluntarily dismiss Defendants Magvas and Foley from this action pursuant

4   to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  It is unclear whether Plaintiff intends to

5   dismiss these Defendants with or without prejudice.  For the sake of judicial efficiency, the Court

6   will consider the motion for summary judgment with respect to Defendants Magvas and Foley to

7   be unopposed.

8   **II.    <u>Summary Judgment Standard</u>**

9          Summary judgment is appropriate when it is demonstrated that there exists no genuine

10  dispute as to any material fact, and that the moving party is entitled to judgment as a matter of

11  law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

12          always bears the initial responsibility of informing the district court of the basis
            for its motion, and identifying those portions of "the pleadings, depositions,
13          answers to interrogatories, and admissions on file, together with the affidavits, if
            any," which it believes demonstrate the absence of a genuine issue of material
14          fact.

15  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

16  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

17  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

18  file.'"  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for

19  discovery and upon motion, against a party who fails to make a showing sufficient to establish

20  the existence of an element essential to that party's case, and on which that party will bear the

21  burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential

22  element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In

23  such a circumstance, summary judgment should be granted, "so long as whatever is before the

24  district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

25  56(c), is satisfied."  *Id.* at 323.

26          If the moving party meets its initial responsibility, the burden then shifts to the opposing

27  party to establish that a genuine dispute as to any material fact actually does exist.  *Matsushita*

28  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

1    In attempting to establish the existence of this factual dispute, the opposing party may not

2  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

3  form of affidavits, and/or admissible discovery material, in support of its contention that the

4  dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

5  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

6  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

7  *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

8  *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

9  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

10  nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

11  *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

12    In the endeavor to establish the existence of a factual dispute, the opposing party need not

13  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

16  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

18  amendments).

19    In resolving a motion for summary judgment, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

22  U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

23  court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

24  *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

25    Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

26  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

27  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

28  issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

**III.**     **Statement Of Facts**[2]

At all times relevant to this action, Plaintiff was an inmate in the custody of the CDCR at California State Prison, Corcoran ("CSP-COR"). Pl.'s Compl., Doc. 1. Each of the events alleged in Plaintiff's complaint occurred at CSP-COR. *Id.* At all times referenced in the complaint, Defendants Magvas, Hernandez, Marsh, Molina, and Foley were employed as CDCR correctional staff members at CSP-COR; Defendants Magvas and Foley as correctional officers, and Defendants Hernandez, Molina, and Marsh as correctional sergeants. *Id.* at sect. III B.; Magvas Decl. ¶ 1; Hernandez Decl. ¶ 1; Marsh Decl., ¶ 1; Molina Decl.¶ 1; Foley Decl. ¶ 1. At all times referenced in the complaint, Defendant Tucker was a CDCR employee working at CSP-COR as a Plumber II. Tucker Decl. ¶ 1.

**A.**     **Defendants' Facts**

On or about October 4, 2008, Plaintiff discovered a small puddle of water on the floor of his cell. Pl.'s Dep. Tr. 17:13 - 18:6, July 7, 2011. In October 2008, Plaintiff was living by himself in CSP-COR's Security Housing Unit ("SHU"), Facility 4B, Unit 2R, cell 22. Pl.'s Compl. at sect. IV; Marsh Decl. ¶ 6. After hearing water in the plumbing chase adjacent to his cell, Plaintiff complained to several correctional staff members including Defendants Magvas and Foley, who were assigned to work the Second Watch (i.e. 6:00 a.m. until 2:00 p.m.) shift in SHU Facility 4B, Unit 2. Pl.'s Dep. Tr. at 18:18 – 19:3; Magvas Decl. ¶ 3; Foley Decl. ¶ 3. In response to Plaintiff's complaints, Defendant Magvas provided Plaintiff with extra bars of soap to assist him in his attempts to patch the apparent source of the leak in his cell. Pl.'s Dep. Tr. at 20:15 – 22; Magvas Decl. ¶ 7.

---

[2] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff's opposition does not include citation to each fact that is disputed, but includes a declaration and exhibits in support. Plaintiff's declaration will be considered to the extent that it is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that he is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The Court will consider only those facts and evidence that are relevant to resolving the motion for summary judgment.

1    Defendants Magvas and Foley separately investigated Plaintiff's cell, as well as the

2    plumbing chase that occupied the space between his cell and the cell immediately adjacent to his

3    (cell 23) attempting to discover the source of the water that appeared to be seeping into

4    Plaintiff's cell. Magvas Decl. ¶¶ 3, 4; Foley Decl. ¶¶ 3, 4.  While investigating Plaintiff's cell,

5    both Defendants Magvas and Foley found that the water on the floor of Plaintiff's cell appeared

6    to be seeping into the cell from the adjacent plumbing chase through small cracks in the concrete.

7    Magvas Decl. at ¶ 4; Foley Decl. at ¶ 4.

8    During their investigation of the adjacent chase, Defendants Magvas and Foley

9    discovered a small pool of water on the floor of the chase, which they surmised could have been

10   the source of the water leaking into Plaintiff's cell. Magvas Decl. ¶ 5; Foley Decl. ¶ 5.  While

11   investigating Plaintiff's cell and the chase, Defendants Magvas and Foley contend that they saw

12   only clear water in both areas; neither smelled any odors or saw any mold, fecal matter, vermin,

13   insects, or any other evidence of materials which would have led them to believe that the water in

14   Plaintiff's cell was contaminated.  Magvas Decl. ¶ 5; Foley Decl. ¶ 5.  After Defendants Magvas

15   and Foley completed their investigations, work orders for repairs to the chase-installed plumbing

16   were prepared and submitted to the prison's maintenance office.  Magvas Decl. ¶ 6; Foley Decl. ¶

17   6.

18   During the same time period in early October 2008, Plaintiff also complained to

19   Defendant Marsh about water leaking into his cell. Pl.'s Dep. Tr. at 63:24 – 64:11; Marsh Decl.

20   ¶ 4.  In October 2008, Defendant Marsh was a correctional sergeant assigned to work the Second

21   Watch shift in SHU Facility 4B, Unit 2. Marsh Decl. ¶ 2.  In response to Plaintiff's complaints,

22   Defendant Marsh also personally investigated Plaintiff's cell.  Marsh Decl. ¶ 4.

23   During his investigation he saw a small puddle of clear standing water on the floor of the

24   cell near the base of the toilet, which appeared to have seeped into the cell through small cracks

25   in the concrete.  *Id.* ¶ 5.  Prior to exiting Plaintiff's cell, Defendant Marsh told Plaintiff that he

26   was prepared to move Plaintiff into an empty cell, where he could continue to live without a cell

27   mate if Plaintiff wished to do so.  *Id.* ¶ 6.  Plaintiff declined Marsh's offer to move Plaintiff to

28   another cell, stating that he did not want to leave his cell.  *Id.*  Following his initial offer to move

5

1  Plaintiff to another cell, Defendant Marsh renewed the offer on at least two other occasions.  *Id.*

2  Plaintiff declined each of Defendant Marsh's subsequent offers to move him to another cell.  *Id.*

3      Sometime during the second week in October 2008, Plaintiff submitted the first of at least

4  two Inmate appeals regarding his complaints about the alleged leak in his cell. Pl.'s Dep. Tr. at

5  71:16 – 20.  In addition to processing Plaintiff's appeal in October 2008 and forwarding it to the

6  prison's maintenance office, Defendant Hernandez also submitted at least one work order to the

7  maintenance office for a plumber's service call in response to Plaintiff's complaints.  Pl.'s Dep.

8  Tr. at 71:21 – 72:11; Hernandez Decl. ¶ 4.  Defendant Hernandez, a sergeant assigned to the

9  Third Watch (2:00 p.m. until 10:00) shift in SHU Facility 4B, Unit 2, contends that he neither

10  saw, nor was he ever advised of any conditions in or around Plaintiff's cell that led him to

11  believe that Plaintiff's cell was contaminated, or otherwise unsafe.  Hernandez Decl. ¶¶ 2, 5.

12      Between October 2008 and April 2009, Defendant Tucker frequently performed various

13  types of plumbing repair services in SHU Facility 4B, Unit 2.  Tucker Decl. ¶ 5.  While

14  Defendant Tucker does not specifically recall meeting Plaintiff, he acknowledges either

15  requesting or performing (or both) non-emergency plumbing repairs to pipes providing water to

16  Plaintiff's cell, as well as the cell adjacent to Plaintiff's cell, in the latter part of 2008 and early

17  2009, as reflected in maintenance work orders.  Tucker Decl. ¶¶ 5, 6, 7; Exs. A, B.  While small

18  quantities of water did leak from some of the pipes near Plaintiff's cell in late 2008 and early

19  2009 before they could be repaired, it was not possible for contaminated water to flood Plaintiff's

20  cell because the water flowing through the pipes in and near Plaintiff's cell was fresh, potable

21  (i.e. drinking) water rather than waste water.  Tucker Decl.  ¶¶ 6, 7.  Defendant Tucker contends

22  that at no time during the performance of his plumbing duties did he either see, or was he advised

23  of, any conditions in or around Plaintiff's cell that led him to conclude that Plaintiff's cell was

24  contaminated from waste water, vermin, or insects, or was otherwise unsafe.  *Id.*  ¶ 8.  Defendant

25  Tucker contends that he never responded to Plaintiff's complaints or requests by swearing at, or

26  otherwise disparaging Plaintiff.  *Id.*

27      In early February 2009 Defendant Molina submitted at least one maintenance work order

28  requesting plumbing services in response to Plaintiff's complaints of water leaking into his cell.

1  Molina Decl. ¶ 8.  In early February 2009, Defendant Molina visually inspected the floor of

2  Plaintiff's cell, and saw nothing that led him to conclude that the cell was contaminated.  *Id.* ¶ 6.

3  When Defendant Molina personally inspected the plumbing chase adjacent to Plaintiff's cell, he

4  contends that he saw only clear water on the floor; he did not smell any foul odors or see any

5  mold, fecal matter, vermin or insects in the water.  *Id.* ¶ 7.

6        Defendants contend that none of the Defendants with the requisite authority to "redline"

7  Plaintiff's cell (i.e. declare that his cell was unsafe for occupancy) either saw, or were advised by

8  anyone, of conditions in or around Plaintiff's cell that led them to believe that Plaintiff's cell was

9  contaminated, or otherwise unsafe. If they had, they would have immediately initiated the

10 process of "red lining" Plaintiff's cell, and thereafter transfer Plaintiff to a safer cell.  Magvas

11 Decl. ¶ 8; Hernandez Decl. ¶ 5; Marsh Decl. ¶ 7; Molina Decl. ¶9; Foley Decl. ¶ 8.  Defendants

12 contend that at no time between October 2008 and April 2009 did Plaintiff ever complain to any

13 of the correctional staff Defendants of, or seek medical treatment for, injuries or illnesses related

14 to either alleged cell contamination, or to problems stemming from his cell's ventilation system.

15 Magvas Decl.  ¶ 8; Hernandez Decl. ¶ 5; Marsh Decl. ¶ 7; Molina Decl. ¶ 9; Foley Decl. ¶ 8;

16 Defs.' Counsel Irby Decl. ¶¶ 6, 7, 8.

17       Defendants contend that any physical injuries that Plaintiff had between October 2008

18 and April 2009 preexisted, and were not aggravated by, any of Defendants' actions.  Irby Decl. ¶¶

19 6, 7, 8.  During the time period alleged in Plaintiff's complaint none of the custody or

20 maintenance personnel assigned to work in the SHU had either the ability or the authority to alter

21 the heating, cooling, or ventilation settings because the thermostatic controls for those systems

22 were housed in a separate area of the prison, and were under the authority and control of different

23 personnel.  Magvas Decl. ¶ 8; Hernandez Decl.  ¶ 5; Marsh Decl. ¶ 7; Molina Decl. ¶ 9; Foley

24 Decl. ¶ 8.

25 //

26 //

27 //

28 //

1    **B.    Plaintiff's Facts**

2    Plaintiff contends the following.[3]  Between October 3, 2008 to April 17, 2009, he had

3    complained to Defendants Marsh, Molina, Hernandez, and Tucker about the vacuum breaker of

4    his toilet and his neighbor's toilet in cell 23, being in disrepair and leaking.  Pl.'s Opp'n, Pl.'s

5    Decl. ¶ 2.  Plaintiff apprised Defendants Marsh, Molina, Hernandez, and Tucker  that two-thirds

6    of his cell floor would flood on a daily basis "with a mirky-brown [sic], foul-smelling

7    contaminated water."  *Id.*  Plaintiff apprised Defendants Molina, Marsh, and Hernandez that the

8    vent in his cell was blowing out ice-cold air, regardless of the elements.[4]  *Id.*  Plaintiff apprised

9    Defendants that they needed to "red-line" (declare his cell and next door cell unsafe for

10   occupancy), until proper repairs could be made, including draining the contaminated water.  *Id.*

11   During the time he was incarcerated in this flooding cell, Plaintiff had to be treated by medical

12

13       [3]  Defendants make several objections to Plaintiff's declaration. Defendants object to Plaintiff's
use of the term "vacuum breaker," contending that such testimony requires technical knowledge of
14   plumbing. Defs.' Objections 1-2. The Court does not find this to be a material fact.  Regardless of
whether it is a vacuum breaker, or a faulty pipe, or a broken valve, the material fact is whether sewage
15   water flooded Plaintiff's cell on a daily basis for several months.  Additionally, Plaintiff testified that he
was once a plumber. Pl.'s Dep. Tr. 15:8-10.  Thus, he may also possess sufficient specialized knowledge
16   of the matter.
         Defendants object that Plaintiff speculates as to the medical causation of his alleged ailments.
17   Plaintiff contends that because of the conditions in his cell, he suffered various ailments.  Plaintiff may
not provide testimony requiring specialized knowledge.  The Court agrees with Defendants that Plaintiff
18   speculates as to the medical cause of his alleged illnesses that he suffered while in his cell during the
relevant time.  Plaintiff's facts have been revised.
19       Defendants also object that Plaintiff cannot testify as to water purity issues.  The Court disagrees
that Plaintiff's testimony requires specialized knowledge as to water purity.  Plaintiff is a percipient
20   witness to the nature of the water, including its color and smell, and can conclude that the water flooding
his cell was "contaminated."  In this instance, "contaminated" is not a term of art that requires
21   specialized knowledge.
         Plaintiff makes several references to inmates who witnessed Plaintiff telling Defendants Marsh
22   and Molina of the conditions in his cell, and who did not witness Defendants Marsh or Molina ever
coming to Plaintiff's cell from October 3, 2008 to April 17, 2009.  Defendants contend that it is
23   speculative and irrelevant, and contains multiple levels of hearsay.  The Court disagrees as to speculation
and relevance.  As to issues of hearsay, the facts in Plaintiff's declaration meed not be immediately
24   admissible if it can become admissible in evidence at a later point.  *Block v. City of Los Angeles*, 253
F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to
25   produce evidence in a form that would be admissible at trial, as long as the party satisfies the
requirements of Federal Rule of Civil Procedure 56.").
26

27       [4]  Though Plaintiff did not specify which Defendants in his declaration, Plaintiff in his deposition
limits his claim regarding cold cell temperature to the sergeants responsible for building maintenance
28   who he specifically informed. Pl.'s Dep. Tr. 85:16-86:4.

1   for a painful rash, severe migraine headaches, severe head/chest colds, and severe, excruciating,

2   and debilitating pain to his surgically repaired neck, caused by excessive coughing and sneezing.

3   *Id.*

4           Plaintiff told Defendant Marsh on four separate occasions to red-line his cell and his

5   neighbor's cell until proper repairs could be done.  *Id.* ¶ 3.  Defendant Marsh said that a work

6   order was in and thus he was not moving Plaintiff and his neighbor.  *Id.*  Plaintiff told Defendants

7   Marsh and Molina of the conditions in his cell when he was in the exercise cages.  *Id.* ¶¶ 5-6.

8   Defendants Marsh and Molina never came to Plaintiff's cell to inspect it.  *Id.*

9   **IV.**   **Analysis**

10          **A.**   **Deliberate Indifference Legal Standard**

11          To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

12  conditions must involve "the wanton and unnecessary infliction of pain . . . ."  *Rhodes v.*

13  *Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

14  prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

15  personal safety.  *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v.*

16  *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

17  unsafe conditions of confinement, prison officials may be held liable only if they acted with

18  "deliberate indifference to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124,

19  1128 (9th Cir. 1998).

20          The deliberate indifference standard involves an objective and a subjective prong.  First,

21  the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v.*

22  *Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second,

23  the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .

24  . ."  *Id.* at 837.  Thus, a prison official may be held liable under the Eighth Amendment for

25  denying humane conditions of confinement only if he knows that inmates face a substantial risk

26  of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45.

27  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk,

28  or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk.  *Id.* at 844-45.

1  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather,

2  the official's conduct must have been wanton.  *Id.* at 835.

3       **B.**    **Defendants Magvas and Foley**

4       Defendants Magvas and Foley contend that they were not deliberately indifferent to a

5  substantial risk of serious harm to Plaintiff's health.  Defs.' Mem. P. & A. 8:3-9:24.  Plaintiff

6  files no opposition to Defendants Magvas and Foley's dismissal from this action.  Based on the

7  undisputed facts, Defendants Magvas and Foley were not aware of any substantial risk of serious

8  harm to Plaintiff's health.  Defendants Magvas and Foley investigated Plaintiff's claims of

9  leaking water in October of 2008 and reported their findings to a supervisor, who then placed a

10 work order.  Defendants' conduct in responding to Plaintiff's complaints was reasonable under

11 the circumstances, and thus Defendants Magvas and Foley are not liable.  *Farmer*, 511 U.S. at

12 844-45.  There is no genuine dispute of material fact for Plaintiff's Eighth Amendment claim

13 against Defendants Magvas and Foley.  Defendants Magvas and Foley are entitled to judgment as

14 a matter of law.

15      **C.**    **Defendants Hernandez, Marsh, Molina, and Tucker**

16           **1.**    **Objective Prong**

17      Defendants contend that Plaintiff has failed to raise a genuine dispute of material fact as

18 to a sufficiently serious harm.  Defendants contend that there was only a small puddle of water in

19 Plaintiff's cell, and that the water was clear, potable water, not contaminated waste water.

20 Defendants contend that they did not perceive any foul odors, fecal matter, vermin, or other

21 unsafe issues emanating from the water.  Defendants contend that Plaintiff did not inform them

22 of any ventilation issues from excessive cold air.

23      Plaintiff declares that there was a murky-brown, foul-smelling water building up and

24 flooding two-thirds of his cell on a daily basis from October 3, 2008 to April 17, 2009.

25 "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an

26 infliction of pain within the meaning of the Eighth Amendment."  *Anderson v. County of Kern*,

27 45 F.3d 1301, 1314 (9th Cir. 1995).  Based on Plaintiff's declaration, there remains a genuine

28 dispute of material fact as to whether Plaintiff was exposed to a sanitation issue that rises to the

1    level of a serious harm within the meaning of the Eighth Amendment.

2        Plaintiff declares that the vent in his cell was blowing ice cold air from October 3, 2008

3    to April 17, 2009, regardless of whether it was necessary.  *Graves v. Arpaio*, 623 F.3d 1043,

4    1049 (9th Cir. 2010) (per curiam) (noting the Eighth Amendment requires adequate heating, but

5    not necessarily a "comfortable" temperature).  Temperature is inadequate when it would pose "a

6    substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Ice-cold temperatures for over six

7    months may pose a substantial risk of serious harm.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642

8    (9th Cir. 1980) (finding that temperatures near freezing at night in isolation cell may allege a

9    constitutional violation).  Based on Plaintiff's declaration, there remains a genuine dispute of

10   material fact as to whether Plaintiff was exposed to such low temperatures that would rise to the

11   level of a serious harm within the meaning of the Eighth Amendment.

12                    **2.      Subjective Prong**

13       Defendants contend that once they were informed of the leaking water in Plaintiff's cell,

14   they acted quickly to ascertain the source of the leak and remedy the problem by repairing it.

15   Defendants also contend that Plaintiff was offered on two occasions to move a vacant cell to

16   avoid exposure, and declined.  Defendants contend that they did not see any conditions that

17   would lead them to conclude that Plaintiff's cell was contaminated.

18       Plaintiff declares that he asked Defendants on several occasions to have his neighbor and

19   his own cell "redlined," but Defendants refused to do anything.  Plaintiff declares that he

20   informed Defendants of the murky brown, foul-smelling water, and requested that they redline

21   his cell until repairs were made, but they refused, forcing Plaintiff to live in those conditions for

22   over six months.  Based on Plaintiff's declaration, there remains a genuine dispute of material

23   fact as to whether Defendants Hernandez, Molina, Marsh, and Tucker acted with deliberate

24   indifference when informed of the leaking water in Plaintiff's cell.  Defendants are not entitled to

25   judgment as a matter of law as to this claim.

26       Defendants also contend that they were never informed of Plaintiff's cell having cold

27   temperatures.  Defendants contend that even if Plaintiff's cell was cold, they did not have any

28   authority to alter the ventilation settings, because such controls were in a separate area of the

                                           11

1   prison, with different personnel.  Plaintiff declares that he informed Defendants Molina, Marsh,

2   and Hernandez of the constant ice cold air being vented into his cell, but they failed to redline his

3   cell.  Construing the facts in the light most favorable to Plaintiff as the non-moving party, and

4   making reasonable inferences thereof, there remains a genuine dispute of material fact.  Even if

5   the maintenance controls for the ventilation system are under the control of different personnel,

6   Defendants' alleged failure to reasonably respond to a sufficiently serious harm of cold exposure

7   would amount to deliberate indifference.  The facts, when construed most favorably for Plaintiff,

8   do not demonstrate that Defendants did not take reasonable steps to address the issue.

9   Defendants contend that Plaintiff was offered the opportunity to change cells but refused;

10  Plaintiff contends that he made several requests to have his cell redlined until the repairs were

11  complete, but Defendants refused.  There remains a genuine dispute of material fact.  Defendants

12  are not entitled to judgment as a matter of law as to this claim.

13          **D.      Qualified Immunity**

14          Defendants contends that they are entitled to qualified immunity.  Government officials

15  enjoy qualified immunity from civil damages unless their conduct violates "clearly established

16  statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

17  *Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, one

18  inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts

19  alleged show the defendant's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S.

20  194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 813 (2009) ("*Saucier*

21  procedure should not be regarded as an inflexible requirement").

22          The other inquiry is whether the right was clearly established.  *Saucier*, 533 U.S. at 201.

23  The inquiry "must be undertaken in light of the specific context of the case, not as a broad

24  general proposition . . . ." *Id.*  "[T]he right the official is alleged to have violated must have been

25  'clearly established' in a more particularized, and hence more relevant, sense:  The contours of

26  the right must be sufficiently clear that a reasonable official would understand that what he is

27  doing violates that right." *Id.* at 202 (citation omitted).  In resolving these issues, the court must

28  view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

1  in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified

2  immunity protects "all but the plainly incompetent or those who knowingly violate the law."

3  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

4         Defendants Magvas and Foley will be granted judgment as a matter of law, and thus the

5  Court need not discuss qualified immunity with respect to the two Defendants. With regards to

6  Defendants Hernandez, Molina, Marsh, and Tucker, qualified immunity should be denied. The

7  alleged facts, when taken in the light most favorable to Plaintiff, demonstrate that Defendants

8  Hernandez, Molina, Marsh, and Tucker violated Plaintiff's Eighth Amendment rights to humane

9  conditions of confinement. Such rights are clearly established. *See Anderson*, 45 F.3d at 1314

10  (sanitation); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (citing *Gillespie*, 629 F.2d at

11  642), *amended by* 135 F.3d 1318 (9th Cir. 1998) (adequate heating in cells).

12  **IV.   Conclusion And Recommendation**

13         Based on the foregoing, it is HEREBY RECOMMENDED that:

14       1.    Defendants' motion for summary judgment, filed December 2, 2011, should be

15            GRANTED in part and denied in part;

16       2.    Summary judgment should be granted in favor of Defendants Magvas and Foley

17            and against Plaintiff for the Eighth Amendment claims;

18       3.    Summary judgment should be denied as to Defendants Hernandez, Molina,

19            Marsh, and Tucker;

20       4.    Defendants Magvas and Foley be dismissed from this action; and

21       5.    This action proceed on Plaintiff's Eighth Amendment claim regarding unsanitary

22            conditions in his cell against Defendants Hernandez, Molina, Marsh, and Tucker

23            and on Plaintiff's Eighth Amendment claim regarding inadequate temperature in

24            his cell against Defendants Hernandez, Molina, and Marsh.

25  //

26  //

27  //

28  //

1    These Findings and Recommendations will be submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen**

3  **(14) days** after being served with these Findings and Recommendations, the parties may file

4  written objections with the Court.  The document should be captioned "Objections to Magistrate

5  Judge's Findings and Recommendations."  A party may respond to another party's objections by

6  filing a response within **fourteen (14) days** after being served with a copy of that party's

7  objections.  The parties are advised that failure to file objections within the specified time may

8  waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th

9  Cir. 1991).

10    IT IS SO ORDERED.

11    **Dated:**   **June 11, 2012**                    **/s/ Dennis L. Beck**
                                                  UNITED STATES MAGISTRATE JUDGE

14